AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

FILED

# UNITED STATES DISTRICT COURT

for the

2022 DEC -9 PM 1:24

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

FRANCIS MILLER
*Petitioner*

v.

Case No. 5:22-CV-451 BJDPRL
*(Supplied by Clerk of Court)*

COLEMAN LOW WARDEN J. GUNTHER
UNITED STATES OF AMERICA
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a) Your full name: FRANCIS MILLER
    (b) Other names you have used: "Dollar"

2.  Place of confinement:
    (a) Name of institution: Federal Correction Complex, Coleman Low
    (b) Address: P.O. Box 1031
    Coleman, FL 33521
    (c) Your identification number: 56407-004

3.  Are you currently being held on orders by:
    ☒ Federal authorities        ☐ State authorities        ☐ Other - explain:

4.  Are you currently:
    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
    If you are currently serving a sentence, provide:
    (a) Name and location of court that sentenced you: United States District Court
    Southern District of Florida
    (b) Docket number of criminal case: 02-60267-CR-Jordan (2)
    (c) Date of sentencing: 07-14-2003
    ☒ Being held on an immigration charge   Detainer awaiting Deportation/Removal
    ☐ Other *(explain):*

Page 2 of 10

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.    What are you challenging in this petition:

☒ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☒ Immigration detention

☒ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other *(explain)*: _____

_____

_____

6.    Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court: BOP- Coleman Low

(b)  Docket number, case number, or opinion number: Administrative hold

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

My Stautory Release Date is 06-03-2023. I have earned 70 day of early release pursuant to First Step Act of 2018, Earned Time Credit

(d)  Date of the decision or action: denied my Earned Credit Time 10-29-2022

## Your Earlier Challenges of the Decision or Action

7.    **First appeal**  Administrative No Appeal is possible due to
Did you appeal the decision, file a grievance, or seek an administrative remedy? a structual

☐ Yes          ☐ No                                                breakdown in
                                                                    the system

*NA*   (a)  If "Yes," provide:

(1)  Name of the authority, agency, or court: _____

(2)  Date of filing: _____

(3)  Docket number, case number, or opinion number: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(b) If you answered "No," explain why you did not appeal:

8.    **Second appeal**

N A

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☐ Yes                ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

(2) Date of filing:

(3) Docket number, case number, or opinion number:

(4) Result:

(5) Date of result:

(6) Issues raised:

(b) If you answered "No," explain why you did not file a second appeal:

9.    **Third appeal**

N A

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes                ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:

(2) Date of filing:

(3) Docket number, case number, or opinion number:

(4) Result:

(5) Date of result:

(6) Issues raised:

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

(b) If you answered "No," explain why you did not file a third appeal: _____

_____

NA 10. **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes          ☐ No

If "Yes," answer the following:

(a)     Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

    ☐ Yes          ☐ No

    If "Yes," provide:

    (1)  Name of court: _____

    (2)  Case number: _____

    (3)  Date of filing: _____

    (4)  Result: _____

    (5)  Date of result: _____

    (6)  Issues raised: _____

_____

_____

_____

_____

(b)     Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

    ☐ Yes          ☐ No

    If "Yes," provide:

    (1)  Name of court: _____

    (2)  Case number: _____

    (3)  Date of filing: _____

    (4)  Result: _____

    (5)  Date of result: _____

    (6)  Issues raised: _____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(c)  Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:

11.  **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☒ Yes          ☐ No

If "Yes," provide:

(a)  Date you were taken into immigration custody:  07-18-2010 (detainer lodge)

(b)  Date of the removal or reinstatement order:  No order issued

(c)  Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☒ No

If "Yes," provide:

(1)  Date of filing:

(2)  Case number:

(3)  Result:

(4)  Date of result:

(5)  Issues raised:

(d)  Did you appeal the decision to the United States Court of Appeals?

☐ Yes          ☒ No

If "Yes," provide:

(1)  Name of court:

(2)  Date of filing:

(3)  Case number:

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

    (4)  Result:

    (5)  Date of result:

    (6)  Issues raised:

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

❑ Yes      ☒ No

If "Yes," provide:

(a)  Kind of petition, motion, or application:

(b)  Name of the authority, agency, or court:

(c)  Date of filing:

(d)  Docket number, case number, or opinion number:

(e)  Result:

(f)  Date of result:

(g)  Issues raised:

### Grounds for Your Challenge in This Petition

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: I qualify for Earned Credit Time pursuant to the First Step Act of 2018. The "Ineligible" status has been removed based on the November 18, 2022 Program Statement (see attached). I have earned 705 day that is substantially longer then my Statutory Release Date. I should be transfered to ICE and Deported

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a)  Supporting facts *(Be brief. Do not cite cases or law.)*:

The Policy Statement # 5410.01 was corrected in accordance with the law and immates on immigration hold are eligible for Earned Credit Time. (see Attaches) I can Apply my Earned Credit Time upon transfer to ICE. I have filed a Motion to Deportation/Removal with ICE and Need an order as regards the law.

(b)  Did you present Ground One in all appeals that were available to you?

❏ Yes          ❏ No

**GROUND TWO:**

N/A

(a)  Supporting facts *(Be brief. Do not cite cases or law.)*:

(b)  Did you present Ground Two in all appeals that were available to you?

❏ Yes          ❏ No

**GROUND THREE:**

(a)  Supporting facts *(Be brief. Do not cite cases or law.)*:

(b)  Did you present Ground Three in all appeals that were available to you?

❏ Yes          ❏ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

(a)  Supporting facts *(Be brief. Do not cite cases or law.)*:

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☐ No

14.  If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: _____

### Request for Relief

15.  State exactly what you want the court to do: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

### Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

_____

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: _12-05-22_

_____
Signature of Petitioner

_____
Signature of Attorney or other authorized person, if any

## Statement of Fact

. Section 102 (b) of the First Step Act amends 18 U.S.C. 53624(b) to give federal inmates more potential credit for good conduct. See First Step Act of 2018, PL 115-391, 132 Stat. 5194 §102(b)(1) (amendment to §3626 (b)); 102(b)(2). The BOP on January 14, 2022 submitted to the Federal Register a new regulation implementing the time credits program, required by the First Step Act of 2018, for persons incarcerated in federal facilities who committed nonviolent offenses. Under the Program, prisoners earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction ("EBRR") programs and "productive activities ("PA"). These earned credits are applied toward earlier placement in prerelease custody.

. To date, Earned Time Credits ("ETC") have not been applied to qualifying inmates. The BOP has delivered a 59 page Program Statement that has identified some of the qualifying EBRR programs and a list of PA. The failure on the local level to apply ETC toward home confinement when applied too late to supervised release, is a failure at every level. First, classification is based on PATTERN Scorea which are incorrect in over 20% of the prison population and always to the disadvantage of the inmate. Second, the BOP is suffering substantial staffing shortages and the remaining staff is being augmented into custody duty making the application of FSA Time Credits and PATTERN Score correction a low priority. Thirdly, the Program Statement is ambiguous. Men and Women who serve crucial positions in the prison: Plumbers, HVAC, Electricians, mental health services, education, etc. may or may not be doing Productive Activities based on their unit team. Fourth, there is no centralized program that the administrators (counselors

1

and case managers) can refer to.  No computer program they can feed the information into.  Therefore each inmate's various activities are judged individually by a single staff member based on the ambiguous Program Statement and arbitrary and ad hoc application of the FSA.

The COVID-19 pandemic exposed many federal agencies as grossly incompetent. The BOP is considered one of the worst of the 432 agencies (Forbes July 19, 2022). From NBC News: Staffing shortages and deficient training leaves First Step Act floundering federal prison employees say "This is the biggest failure I've seen of something that's a law.  It's pathetic, It's not going at all."  Joe Rojas, the literacy coordinator at Coleman Correctional Complex.  "I'm the Education Department Director and we're never open, and if we are it is barely.  Most of us are augmented: There's no programming."

Even with limited programming, COVID-19 restrictions, staffing shortages and over 2 1/2 years of lockdown, many inmates have accumulated over a year of ETC that would be served as home confinement.  Inmates working at UNICOR or participating in the RDAP substance abuse treatment have close to 2 years of ETC that will be served in home confinement.

It must be noted that the BOP program statement was radically changed in the Federal Register/Volume 87, No. 12/ Wednesday, January 19, 2022/ Rules and Regulations page 2705.  It is still ambiguous, in violation of the letter and intent of the law, but it is substantially better than its original directive. Three years after the fact the BOP has not resolved the substantial PATTERN Score failures or applied the law correctly.  But, the real failure is that the prisons simply lack the training, staff, motivation, and expertise to properly implement

the time credits and the defendant's now look to the court to apply the law correctly for in this case justice delayed is **Justice Denied.**

The FSA provides that "a prisoner _shall_ earn 10-15 days of time credits for every 30 days of successful participation in "EBRR" programming or "PA." Much of the programming was denied to inmates at Coleman Low due to staffing and the over 2 1/2 years of constant lockdown.

Only about 40% of BOP inmates can earn FSA Time Credits. The law does not cap the amount of FSA Time Credit an inmate can earn. The Attorney General may act such that the DOJ grabs hold of the Time Credit in light of the massive failure of the BOP. This follows the failure of the BOP to protect the inmate population from COVID-19 where the death rate was 5 times the general population. According to BOP's own record in 4 years only 8,600 inmates have gotten sentence recalculations. That is less that 1% of the prison Population (.0059). It should be noted, several programs such as UNICOR and RDAP earn 15 days and more than one program can be completed at the same time.

District Courts have stepped in to correct this problem: **Dyer v Fulgram** Case No. 1:21cv299 (Ed Tenn May 20, 2022; **Stewart v Snider** (June 20, 2022); **Marier v Bergami**, Case No. 21C50236 (ND III Aug 9, 2022). (The surprising and unnanounced policy is this: "When inmates reach the "24 months" is that the law gives an inmate, in good standing, 1 year of half-way house and completion of the RDAP substance abuse treatment reduces the inmate sentence by 1 year. Essentially, the BOP is killing the Earned Time Credit by delaying the process.

An inmate who had participated and has ETC of 2 years (most inmates) automatically lose some or all of his or her ETC under the current procedure. "We estimate that there are thousands of inmates who will not receive the full benefit, days off of their federal prison sentence due to the First Step Act simply, because the agency is uncertain how to calculate their benefits." Walter Pavic, President of the consulting firm Prisonology LLC, told NBC news. Gilna Derek, Director of Research for Federal Legal News wrote: "Let me be clear: the system's archaic computer system is not capable of properly processing those credits and won't be for many years. All calculations must be done by hand, as admitted under oath." The agency has NO idea when this task will be completed and often will intentionally mislead you, or deflect blame. If you want these credits start your remedies."

1. Pre-release custody includes halfway house and home confinement. Inmates, by law, can receive 1 year of halfway house but home confinement was not limited under FSA. The CARES Act, a subordinant law to to FSA dealing with the COVID-19 pandemic eliminated any limit on home confinement. Both laws use the PATTERN Score to determine eligibility and release status. If the FSA Earned Time Credit ("ETC") exceeds the legally allowed halfway house release date the Director of the BOP at his or her discretion may apply the ETC to 12 months of Supervised Release. The PATTERN Score and the implementation of ETC was to be completed on January 19, 2020. This was not done.        12-05-22

4

## SUPPLEMENT

On October 28, 2022 NBC News stated that the "Auto-Calc, the new BOP computer app created to automatically calculate inmates earned-time credits, suffered a technical glitch as it was launched earlier this month." That is not the fact. The auto-calc suffered "garbage in/garbage out." Coleman Low had been reporting to Washington headquarters that the EBCR programs were being offered to the inmate population. They listed the programs and the dates they were offered. This led the auto-calc to determine that 100's of inmates had refused to take courses they needed therein making them ineligible for FSA ECT.

The truth is, and can be proven by merely asking the Psychology Department if said courses were offered. Interestingly, Coleman Low is paid to offer these courses. This means that someone in the Coleman Low administration lied to headquarters and received payment for services never rendered.

This problem exists and poisoned the system at Coleman Low because no one is ever accountable, and men serve sentences beyond their legal release dates. Now, 46 months after the FSA was implemented and the records are wrong. One of he other problems is as regards RDAP, where Coleman Low has a policy of soliciting inmates where were not recommended by the court or have no history of substance-abuse to enroll in RDAP. When the inmate refuses to enroll they are listed as refusal for a program they had no reason, recommendation or requirement to participate in. Interestingly, Coleman Low receives "full funding" for an inmate who enters RDAP and stays 90 days. It currently takes over a year to complete RDAP. As they say in criminal investigations "follow the money."

The issue of ex-post-facto is discussed in the foregoing previously filed motion. Forbes: "Bureau of Prisons Failure To Communicate First Step Act.", published October 16, 2022, addresses this issue by pointing out "prisoners were not told that the survey's completion was a requirement to initiating the FSA credits." Likewise inmates were encouraged to opt out of RDAP and explicitly advised that it would **NOT** effect there ECT.

The inmates are now, after the fact, being denied their ECT by following the advice of Unit Team. There are several internal investigations pursuant to this problem, but again, no one is accountable, and men sit in prison

1

beyond their legal release date.  The Office of Inspector General and the BOP Office of Internal Affairs lead these investigations with not projected completion date.  The results are predictable but the delay is unacceptable.

It is time for prisoners (and the Court) to realize that the federal prison system is structurally incapable of following the terms of FSA and other statutes and judicial decisions related to conditions of confinement. COVID-19 may have caused many of the problems, but that is not excuse for the continued abuse and illegal incarcerations of men who have served their sentence under the law.  There is no rule that gives case managers/Unit team or other BOP officials any power to create "refusal status" such as withdrawal or choosing not to participate in RDAP.  This is simply not part of the statute.

Respectfully,

12-05-22

Date

FCC Coleman Low
P.O. Box 1031
Coleman, FL 33521

## SUPPLEMENT: FIRST STEP ACT TIME CREDIT CALCULATION

As has been stated in prior filings the BOP has, after 47 months, been unable to understand and properly determine the First Step Act Time Credit Calculation. This is due to several structural failures in their evaluation and an understanding of the First Step Act Time Time Credit Calculation. To address this failure the BOP has issued its third Program Statement as to this problem in less than three months. Essentially, Central Office is demanding that the errors in the information coming from the individual prison be corrected by December 31, 2023, a period of around 40 days.

Let consider the absurdity of this directive to the individual prison's staff, as follows:

1. According to the BOP 41% of the prison population earns Time Credits: around 80,000 inmates.

2. The next 40 days contain three national holidays and one system-wide day off ( the day after Thanksgiving). A large portion of the non-security staff including counselors, case managers and unit managers, can and do, take at least one, ten day holiday due to the fact that they only have to use three days of vacation time. Some staff take both of the ten day vacations. This means that of the 40 days available to correct errors in Time Credit Calculations there will be **SIXTEEN DAYS** of full capacity to address 80,000 inmates Time Credits.

3. The problem with Washington's automated calculation system was that it depended on the individual prisons supplying accurate information to Washington. As stated previously: garbage-in/garbage-out. A lack of staff, a lack of training, a lack of interest and a needlessly complex and constantly

1

changing set of criteria combined with a lack of motivation and self-serving mistakes at the local level especially at Coleman Low <u>CAN NOT</u> be corrected in 40 days. Failure is imminent; further delay is certain; only the Court can correct this travesty and release these men in accordance with the law.

4. The final absurdity is that if the prisons do not correct their errors by January 1, 2023 any errors in needs assessment, declines, participation, PATTERN scores, and all the other subjective evaluations "will lead to not earning ETC's in accordance with the federal regulations." The failure by Coleman Low to correct the errors in their information only damages the inmate. Their failure is our loss. The BOP has had four years to get this right and only the inmate loses with their failure. It should be noted as absurd as it may seem, releasing prisoners is counter intuitive to the staff. It is like giving away your assets. (quoting policy, see attached).

5. Is such doubt warranted? Let's consider the "eligible elderly offender" program developed based on the Second Chance Act of 2005. Under this law "eligible elderly offender" over 65 and having served two-thirds of his or her sentence could be released. The program resulted in the release of 76 inmates. After three years only 3 had been returned to prison. This was less than a 5 percent recidivism rate and was the most successful early release program ever. The program was suspended immediately by the BOP based on cost. It was too expensive to release inmates.

One might ask how that is possible? The BOP front-loaded all costs in to the program for psychologists, consultants, staffing, start-ups, and the evaluations of hundreds of elderly inmates to select the 76 such that the cost per release was 41,000 dollars per year over 3 years. If they had released 600

2

inmates the cost would have been around $5,000 per year.  If the program had been continued the cost would have dropped even more.  The BOP does not want to release inmates and this program is going to fail just as the eligible elderly offender program unless the BOP follows the law.

      6. A complete review of the Program Statement will demonstrate that all of the previous obstructions stipulated in the two prior Program Statements have been eliminated as an inaccurate interpretation of the law.  The 18 month cut off date is gone.  The subjective denials are no longer applicable.  In fact the new Program Statement states if an in mate has a low or minimum PATTERN score they will receive 705 days of Earned Credit Time as of today (the maximum number of days).  It also recognizes all forms of work as productive activity.  IT states that detainers do not prevent inmates from earning Credit Time.

      7. Attached hereto and made part hereof by reference is the Inmate Message.  The new Program Statement: CPD/CPB #5410.01, Dated Novermber 18, 2022 can be viewed on the U.S. Department of Justice, Federal Bureau of Prisons web site and respectfully request the Honorable Court take judicial notice of the entire document.

      The Honorable Court is the final refuge for the enforcement of the First Step Act of 2018 Earned Time Credits.  For 4 years men have been denied their earned time credit and now the BOP is trying to kill the program for many inmates.  The Honorable Court can and should act to apply the law and give the Petitioner his Earned Credit Time.

Respectfully Submitted, _(signature)_ 12-05-22

3

**Inmate Message**

## First Step Act Time Credits Calculation

- In January 2022, the federal regulations were published describing how First Step Act time credits (FTCs) are earned and applied. BOP used this guidance to calculate FTCs, and more recently an automated calculator was implemented.
- When this automation happened, some of you may have noticed your time credit balance decreased. The primary reasons for this change are because some inmates did not complete needs assessments and/or declined programs.
- To assist inmates in addressing these issues, Unit Team staff will receive rosters identifying the individuals who lost credit.
- **A grace period will be available until December 31, 2022, to allow you the opportunity to complete all needs assessments or address any declined programs.** During this period, the agency will work to assist all inmates in completing their needs assessments, and if completed by December 31, 2022, you will earn available FTCs.
- Needs assessments will be reissued during this time period to inmates with unassessed needs. In addition, any decline codes in place up to December 31, 2022, will not result in an inmate being placed in non-earning status. The BOP will work with inmates to develop a new plan if you have program decline codes and will only withhold if an inmate again declines to participate in a recommended program.
- **Beginning January 1, 2023, full automation will begin, and any incomplete needs assessments or any declined to participate codes will lead to you not earning FTCs in accordance with the federal regulations.**
- Failure to resolve these issues by the deadline will result in inmates being ineligible to earn or apply the time credits earned when the full auto-calculation resumes (and accounts for program declines and missing needs assessments).
- Three additional changes are being made to how credits are calculated:

    - First, you will soon be able to see all potential FTC you may earn over the course of your sentence. This number is only an estimate; it is not a guarantee and may change depending on your

GREGG, DWIGHT 69001018

successful participation in programming or non-participation.

- Second, you will be able to earn credit while in administrative detention. In doing so, it is expected that you will continue participating in available programming opportunities provided to you.
- Finally, you will be able to continue earning credit while in the community, so long as you continue to successfully comply with all the rules and procedures of pre-release custody.

GREGG, DWIGHT 69001018



| **Individualized Needs Plan - Program Review    (Inmate Copy)** | **SEQUENCE: 01112654** |
|---|---|
| Dept. of Justice / Federal Bureau of Prisons | **Team Date: 10-25-2022** |
| Plan is for inmate: MILLER, FRANCIS  56407-004 | |

| | | |
|---|---|---|
| Facility: | COL  COLEMAN LOW FCI | Proj. Rel. Date:  06-03-2023 |
| Name: | MILLER, FRANCIS | Proj. Rel. Mthd:  GOOD CONDUCT TIME |
| Register No.: | **56407-004** | DNA Status:  COM03213 / 04-05-2010 |
| Age: | 45 | |
| Date of Birth: | 12-03-1976 | |

## Detainers

| Detaining Agency | | Remarks |
|---|---|---|
| ICE | | ILLEGAL ENTRY INTO THE UNITED STATES |
| | | CITIZEN OF THE BAHAMAS |
| | | POSSIBLE DEPORTATION |

## Pending Charges

BICE, pending deportation.

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COL | ISM/RD ORD | RECORDS/R&D ORDERLY | 01-29-2021 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COL | ESL HAS | ENGLISH PROFICIENT | 11-04-2003 |
| COL | GED EARNED | GED EARNED IN BOP | 11-18-2014 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| COL | W | LOW PARENTING | 07-19-2022 | 09-22-2022 |
| COL | C | ACE CAREER IN CATERING | 01-28-2020 | 01-05-2021 |
| COL | C | ACE CDL | 09-05-2019 | 01-21-2020 |
| COL | C | CPR CLASS- RPP #1 | 08-23-2019 | 08-23-2019 |
| COL | C | ACE MONEY AND BANKING | 05-28-2019 | 08-27-2019 |
| COL | C | ACE CLASS METABOLISM | 01-08-2019 | 05-22-2019 |
| COL | C | FLAG FOOTBALL OFFICIATING CLAS | 08-13-2018 | 08-16-2018 |
| COL | C | FLAG FOOTBALL OFFICIATING CLAS | 09-28-2016 | 09-28-2016 |
| COL | C | FLAG FOOTBALL OFFICIATING CLAS | 09-28-2016 | 09-30-2016 |
| COL | C | TOURNAMENT MANAGEMENT CLASS | 07-11-2016 | 07-24-2016 |
| COL | C | SOCCER OFFICIATING CLASS | 02-19-2016 | 03-01-2016 |
| COL | C | SOCCER OFFICIATING CLASS | 08-12-2015 | 10-09-2015 |
| COL | C | SOCCER OFFICIATING CLASS | 04-22-2015 | 05-20-2015 |
| COL | C | GED-PRE LVL 0900-1030 M-F  RM1 | 03-04-2014 | 11-18-2014 |
| COL | C | TOURNAMENT MANAGEMENT CLASS | 09-09-2014 | 10-10-2014 |
| COL | C | BASKETBALL SPORTS RULES | 08-04-2014 | 09-05-2014 |
| COL | C | SPORTS RULES | 02-11-2014 | 03-04-2014 |
| COL | W | M-F 9-1030 ADVANCED GED/EDUC | 03-03-2014 | 03-04-2014 |
| COL | W | M-F 1200-130 ADVANCED GED/EDUC | 02-03-2014 | 03-03-2014 |
| COL | W | M-F 1230-2 ADVANCED GED/EDUC | 01-07-2013 | 02-03-2014 |
| COL | C | TOURNAMENT MANAGEMENT CLASS | 09-03-2013 | 10-10-2013 |
| COL | W | GED 730-9AM,MONDAY-FRIDAY | 10-22-2012 | 01-07-2013 |
| COM | W | GED MS. ARNING 0930-1100 M-F | 10-03-2006 | 10-12-2012 |
| COM | C | SPORTS RULES | 06-24-2011 | 08-01-2011 |
| COM | C | BEGINNING LEATHER CLASS | 06-06-2011 | 07-27-2011 |
| COM | C | SPORTS RULES | 03-04-2011 | 05-20-2011 |
| COM | C | MATH STUDY HALL(ACE) | 01-03-2010 | 03-26-2011 |
| COM | C | ABDOMINALS CLASS | 11-15-2010 | 01-31-2011 |
| COM | C | ABDOMINALS CLASS | 06-07-2010 | 08-19-2010 |
| COM | C | CULINARY ARTS MANAGEMENT | 04-24-2009 | 08-10-2009 |
| COM | C | CULINARY ARTS-BASIC | 01-09-2009 | 04-24-2009 |
| COM | C | ACE REAL ESTATE CLASS | 06-26-2008 | 10-08-2008 |



**Individualized Needs Plan - Program Review**    **(Inmate Copy)**    SEQUENCE: 01112654
Dept. of Justice / Federal Bureau of Prisons    Team Date: 10-25-2022
Plan is for inmate: MILLER, FRANCIS  56407-004

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| COM | C | #6 MAKING PEACE W/YOUR PAST | 08-01-2006 | 11-01-2006 |
| MIA | W | GED 12:30-2PM | 12-02-2003 | 04-28-2005 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|--------------|-----------------|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

**Current Care Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 04-27-2005 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-14-2010 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 07-17-2003 |
| YES F/S | CLEARED FOR FOOD SERVICE | 08-29-2006 |

**Current Drug Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| ED NONE | DRUG EDUCATION NONE | 09-22-2016 |

**FRP Payment Plan**

Most Recent Payment Plan

**FRP Assignment:**    **COMPLT**    **FINANC RESP-COMPLETED**    Start: 09-13-2006

Inmate Decision:    **AGREED**    **$180.00**    Frequency: **SINGLE**
Payments past 6 months:    **$0.00**    Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $500.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**FRP Deposits**

Trust Fund Deposits - Past 6 months:    $574.00    Payments commensurate ?   Y

New Payment Plan:    ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 01-28-2020 |
| N-ANGER Y | NEED - ANGER/HOSTILITY YES | 10-29-2022 |
| N-ANTISO Y | NEED - ANTISOCIAL PEERS YES | 10-29-2022 |
| N-COGNTV Y | NEED - COGNITIONS YES | 10-29-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC N | NEED - EDUCATION NO | 10-29-2022 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 10-29-2022 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 10-29-2022 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 10-29-2022 |
| N-MEDICL N | NEED - MEDICAL NO | 10-29-2022 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 10-29-2022 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 10-29-2022 |
| N-TRAUMA N | NEED - TRAUMA NO | 10-29-2022 |
| N-WORK N | NEED - WORK NO | 10-29-2022 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 10-29-2022 |

**Progress since last review**

Did not complete any recommended goals
Completed LOW Parenting course.

**Next Program Review Goals**



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MILLER, FRANCIS  56407-004

SEQUENCE: 01112654
Team Date: 10-25-2022

Recommend you write and keep on file a Resume.
Save money towards your release (25% of your deposits).
Recommend you enroll and participate in at least 2 ACE class (Adult Continuing Education) this review period.

## Long Term Goals

Save money towards your release (minimum $1000). Complete this 12 months prior to your RRC release date (NLT 06-2023).

## RRC/HC Placement

No.
Criminal alien releasing to custody of ICE.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources
- Offense
- Prisoner
- Court Statement
- Sentencing Commission

Inmate has been individually assed for his appropriateness and for up to 12-months RRC placement under the 2nd Chance Act using the five factor review from 18USC3621(b).  However, inmate has a BICE detainer.

## Comments

Any/All pending charges must be resolved.

**FSA Time Credit Assessment**
Register Number:56407-004, Last Name:MILLER

U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| Register Number....: 56407-004 | Responsible Facility: COL |
| Inmate Name | Assessment Date.....: 10-09-2022 |
|   Last.............: MILLER | Period Start/Stop...: 12-21-2018 to 10-09-2022 |
|   First............: FRANCIS | Accrued Pgm Days....: 488 |
|   Middle...........: | Disallowed Pgm Days.: 900 |
|   Suffix...........: | FTC Towards RRC/HC..: 240 |
| Gender.............: MALE | FTC Towards Release.: 0 |
| Start Incarceration: 07-14-2003 | Can Apply FTC.......: No |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-21-2018 | 10-09-2022 | accrue | 488 |

  **Cannot apply FTC**
    **Detainer: Yes**

---

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-21-2018 | 01-15-2020 | accrue | 390 |

  Accrued Pgm Days...: 390
  Carry Over Pgm Days: 0
  Time Credit Factor.: 15
  Time Credits.......: 195

---

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 01-15-2020 | 07-03-2022 | disallow | 900 |

  **Incomplete needs assessment**
    **Missing Need Area(s)**
    Antisocial Peers
    Cognitions

| Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
| COL | FSA | N-ANTISO R | 07-25-2020 | 0000 | 05-28-2021 | 2310 |
| COL | FSA | N-COGNTV R | 07-25-2020 | 0000 | 05-28-2021 | 2310 |
| COL | FSA | N-TRAUMA R | 07-25-2020 | 0000 | 05-28-2021 | 2310 |
| COL | FSA | N-ANTISO R | 05-28-2021 | 2310 | 12-18-2021 | 1221 |
| COL | FSA | N-COGNTV R | 05-28-2021 | 2310 | 12-18-2021 | 1221 |
| COL | FSA | N-TRAUMA R | 05-28-2021 | 2310 | 12-18-2021 | 1221 |
| COL | FSA | N-ANGER R | 07-24-2021 | 0000 | 09-15-2021 | 0850 |
| COL | FSA | N-FM/PAR R | 07-24-2021 | 0000 | 09-15-2021 | 0850 |
| COL | FSA | N-ANTISO R | 12-18-2021 | 1221 | 01-16-2022 | 0030 |
| COL | FSA | N-COGNTV R | 12-18-2021 | 1221 | 01-16-2022 | 0030 |
| COL | FSA | N-TRAUMA R | 12-18-2021 | 1221 | 01-16-2022 | 0030 |
| COL | FSA | N-ANTISO R | 01-16-2022 | 0030 | 05-17-2022 | 1729 |
| COL | FSA | N-COGNTV R | 01-16-2022 | 0030 | 05-17-2022 | 1729 |

**FSA Time Credit Assessment**

Register Number:56407-004, Last Name:MILLER

**U.S. DEPARTMENT OF JUSTICE**                                      **FEDERAL BUREAU OF PRISONS**

| COL | FSA | N-TRAUMA R | 01-16-2022 0030 | 05-17-2022 1729 |
| COL | FSA | N-TRAUMA R | 05-17-2022 1729 | 06-04-2022 0525 |
| COL | FSA | N-ANTISO R | 05-17-2022 1729 | 07-02-2022 1028 |
| COL | FSA | N-COGNTV R | 05-17-2022 1729 | 07-02-2022 1028 |

-------------------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|-------|------|------------|----------|
| 07-03-2022 | 10-09-2022 | accrue | 98 |

  Accrued Pgm Days...: 98
  Carry Over Pgm Days: 0
  Time Credit Factor.: 15
  Time Credits.......: 45

## FSA Recidivism Risk Assessment (PATTERN 01.03.00)

**Register Number:56407-004, Last Name:MILLER**

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 56407-004 | Risk Level Inmate....: R-LW |
| Inmate Name |   General Level......: R-LW (14) |
|   Last.........: MILLER |   Violent Level......: R-LW (9) |
|   First........: FRANCIS | Security Level Inmate: LOW |
|   Middle.......: | Security Level Facl..: LOW |
|   Suffix.......: | Responsible Facility.: COL |
| Gender.........: MALE | Start Incarceration..: 07/14/2003 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 45 | 14 | 8 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 5 | 16 | 6 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 2 | 2 | 4 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoNeed | -6 | -3 |
| All Incident Reports (120 Months) | 1 | 1 | 1 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | 104 | 0 | 0 |
| Time Since Last Serious Incident Report | 186 | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 6 | -9 | -3 |
| Work Programs | 3 | -2 | -2 |
| | Total | 14 | 9 |

## FSA Recidivism Risk Assessment (PATTERN 01.02.01)
**Register Number:56407-004, Last Name:MILLER**

**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 56407-004 | Risk Level Inmate....: R-LW |
| Inmate Name |   General Level......: R-LW (12) |
|   Last.........: MILLER |    Violent Level......: R-LW (9) |
|   First........: FRANCIS | Security Level Inmate: LOW |
|   Middle.......: | Security Level Facl..: LOW |
|   Suffix.......: | Responsible Facility.: COL |
| Gender.........: MALE | Start Incarceration..: 07/14/2003 |

**PATTERN Worksheet Summary**

| Item | Value | General Score | Violent Score |
|---|---|---|---|
| Current Age | 45 | 14 | 8 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 5 | 16 | 8 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 2 | 2 | 2 |
| Education Score | HighSchoolDegreeOrGED | -4 | -2 |
| Drug Program Status | NoNeed | -9 | -3 |
| All Incident Reports (120 Months) | 1 | 1 | 1 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | 93 | 0 | 0 |
| Time Since Last Serious Incident Report | 176 | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 6 | -6 | -3 |
| Work Programs | 3 | -2 | -2 |
| | Total | 12 | 9 |



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:         CPD/CPB
NUMBER:  5410.01
DATE:       November 18, 2022

# First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

*/s/*

*Approved*: Colette S. Peters
Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE**

**§ 523.40 Purpose.**

**(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115-391, December 21, 2018, 132 Stat. 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits."**

**(b) Generally, as defined and described in this subpart, an eligible inmate who successfully participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).**

The purpose of this policy is to establish Bureau of Prisons (Bureau) criteria and procedures for awarding time credits pursuant to 18 U.S.C § 3632(d)(4) and 18 U.S.C § 3624(g) to eligible inmates under the provisions of First Step Act of 2018 (FSA) codified in part in Title 18 U.S.C. § 3632.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

CURRY, ARTHUR 23036057

a. **Program Objectives**.  The expected results of this Program Statement are to:

- Inform inmates and staff of the process for earning, documenting, applying, forfeiting, and restoring after forfeiture FSA Time Credits (FTCs) in accordance with the FSA.
- Inform inmates and staff of the circumstances which would preclude an inmate from earning and/or applying FTCs.
- Identify the process for applying FTCs in combination with the Residential Drug Abuse Treatment Program (RDAP) early release benefit under 18 U.S.C. § 3621(e).

b. **Institution Supplement**.  None required. Should local facilities make any changes outside changes required in national policy or establish any additional local procedures to implement national policy, the local Union may invoke to negotiate procedures or appropriate arrangements.

## 2.  BACKGROUND

The FSA provides eligible inmates may earn FTCs for successfully participating and completing approved EBRR programs or PAs.  The FSA prohibits inmates from receiving credit prior to its enactment, prior to the commencement of the inmate's sentence, or if the inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. The FSA allows qualifying inmates to apply FTCs toward prerelease community-based placement (i.e., Residential Reentry Center (RRC) and/or home confinement (HC)). Further, at the discretion of the Director of the Federal Bureau of Prisons (Director), the FSA allows for FTC to be applied toward early release to supervision.

## 3.  DEFINITIONS OF TERMS

§ 523.41 Definitions.

(a) *Evidence-Based Recidivism Reduction (EBRR) Program.* **An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:**

(1) **Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;**
(2) **Family relationship building, structured parent-child interaction, and parenting skills;**
(3) **Classes on morals or ethics;**

**(4) Academic classes;**
**(5) Cognitive behavioral treatment;**
**(6) Mentoring;**
**(7) Substance abuse treatment;**
**(8) Vocational training;**
**(9) Faith-based classes or services;**
**(10) Civic engagement and reintegrative community services;**
**(11) Inmate work and employment opportunities;**
**(12) Victim impact classes or other restorative justice programs; and**
**(13) Trauma counseling and trauma-informed support programs.**

A list of approved EBRR programs is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division's intranet pages. The list will be updated as programs/activities are added.

**(b) *Productive Activity (PA).* A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating.**

Productive activities include a variety of groups, programs, classes and individual activities which can be either structured or unstructured. These pro-social activities contribute to an inmate's overall positive institutional adjustment, to include maintaining clear institution conduct, and include, but are not limited to:

- Structured, curriculum-based group programs and classes
- Productive, free-time activities (e.g., recreation, hobby crafts, or religious services)
- Family interaction activities (e.g., social visiting)
- Personal growth and development classes (e.g., adult continuing education classes)
- Institution work programs
- Community service projects
- Participation in an Inmate Financial Responsibility plan

The Bureau has approved a group of specific, structured, curriculum-based PAs which are available to assist the inmate in addressing identified needs. The list is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division intranet pages. The list will be updated as programs/activities are added.

**(c) *Successful participation.***

**(1) An eligible inmate must be "successfully participating" in EBRR Programs or**

**PAs to earn FSA Time Credits for those EBRR Programs or PAs.**
**(2) "Successful participation" requires a determination by Bureau staff that an**
**eligible inmate has participated in the EBRR programs or PAs that the Bureau has**
**recommended based on the inmate's individualized risk and needs assessment, and**
**has complied with the requirements of each particular EBRR Program or PA.**

An inmate will remain in FTC earning status while on any waitlist for EBRR Programs or PAs
recommended based on the inmate's needs assessment, not to exceed two assessment periods, as
long as the inmate has not refused or declined to participate. Active participation in at least one
EBRR Program or PA by the inmate supersedes this requirement. Exceptions to the two-
assessment period time frame can be granted by the Regional Director upon request from the
Warden. However, should an inmate refuse or decline to participate in the recommended EBRR
program or PA for which they had been on a waitlist, staff will enter the applicable decline code
in SENTRY, and the inmate will be considered declined, or opted out, for the entire waitlist
period. The waitlist period is defined in terms of the corresponding need area(s). When an
inmate declines participation after being on a waitlist, the auto-calculation application will first
identify any need areas associated with the declined program and then identify the oldest waitlist
associated with the need area(s). Any credits earned since the oldest waitlist associated with the
need area, without intervening participation, will be rescinded to reflect the inmate's refusal.

**(3) Temporary operational or programmatic interruptions authorized by the**
**Bureau that would prevent an inmate from participation in EBRR programs or PAs**
**will not ordinarily affect an eligible inmate's "successful participation" for the**
**purposes of FSA Time Credit eligibility.**
**(4) An eligible inmate, as described in paragraph (d) of this section, will generally**
**not be considered to be "successfully participating" in EBRR Programs or PAs in**
**situations including, but not limited to:**
  **(i) Placement in a Special Housing Unit;**

Inmates in Disciplinary Segregation status will not be considered to be "successfully
participating." Inmates in restrictive housing for Administrative Detention shall obtain
FTCs if they otherwise remain in earning status under the policy.

**(ii) Designation status outside the institution (*e.g.,* for extended medical placement**
**in a hospital or outside institution, an escorted trip, a furlough, etc.);**
**(iii) Temporary transfer to the custody of another Federal or non-Federal**
**government agency (*e.g.,* on state or Federal writ, transfer to state custody for**
**service of sentence, etc.);**

In the case of placement or transfers outside the institution (e.g., furlough, writ, escorted

trip, outside hospital placement, etc.), an inmate will continue to earn FTCs if they are in the institution for any part of the day. An inmate must be out of the institution for the entire 24-hour day before the inmate reverts to non-earning status.  Upon return to the institution, the inmate's earning status will resume.

**(iv) Placement in mental health/psychiatric holds; or**
**(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).**

An inmate is considered to be opting out, and therefore, is not in earning status, if the inmate refuses or declines to participate in any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. Further, an inmate is considered to be opting out if the inmate refuses to participate in or fails to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's assessment system.  See the Program Statement **First Step Act Needs Assessment**.

**(5)(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.**

An inmate's refusal to complete any portion of the SPARC-13 or to participate in EBRR programs or structured, curriculum-based PAs recommended to address an identified need is documented in SENTRY using FSA-specific assignments. See the Program Statement **First Step Act Needs Assessment.**

**(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation. (***see*** this part: 28 C.F.R. part 541)**
**(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).**

Note: C.F.R. citation added due to typographical error in published regulations.

**(d)** *Eligible inmate —*
    **(1)** *Eligible to earn FSA Time Credits.* **An inmate who is** *eligible to earn* **FSA Time**

Credits is an *eligible inmate* for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.

(2) *Exception.* If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not *eligible to earn* FSA Time Credits.

Federal inmates in state custody are not eligible to earn FTCs. Additionally, state boarders, treaty transfers inmates, and military inmates sentenced pursuant to the Uniform Code of Military Justice who are serving their sentence in Bureau custody are not eligible to earn FTCs.

Inmates sentenced under the Code of District of Columbia (DC Code) cannot earn FTCs unless or until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility). If and when the earning of FTCs is authorized for inmates sentenced under DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY. Any retroactive application of FTCs will be made consistent with the authorities granted under DC Code.

## 4. DETERMINATION OF ELIGIBILITY

At the inmate's Initial Classification, the unit team will conduct a review of the inmate's current conviction(s) as well as prior criminal convictions to determine the inmate's eligibility to earn FTCs.

For the current offense(s) review, the unit team will review the Judgement & Commitment (J&C) Order and the Presentence Investigation Report (PSR) for sentencing enhancements, if necessary, to determine if the inmate is ineligible. The list of FTC ineligible offenses, identified by statute, based on the inmate's current offense(s) is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch intranet page. If an inmate is determined to be ineligible based on the current offense(s), no review of prior offenses is required.

For the prior conviction review, an inmate is ineligible to earn FTCs if:

- The current offense is determined to be a "serious violent felony" not already specifically listed by the statute, and
- The inmate was sentenced to a term of imprisonment of more than a year for the current offense, and

- The inmate served a term of imprisonment of more than a year for a previous federal or state offense consisting of murder, voluntary manslaughter, assault with intent to commit murder, aggravated sexual abuse and sexual abuse, abusive sexual contact, kidnapping, carjacking, arson, or terrorism.

Additional criteria regarding the prior offense include:

- The conviction must have been based on an adult conviction. Juvenile adjudications are not considered, and
- If the prior conviction is a state offense, the state offense must match the specific federal offense listed above element-by-element.

For purposes of this review only, "serious violent felony" offense is defined by 18 U.S.C. § 3559(c)(2)(F):

(i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses; and

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]

Due to the complexity of the prior offense review, questions regarding whether an offense is disqualifying may be referred to an institution's local Consolidated Legal Center (CLC) for guidance.

An inmate's eligibility status will be documented on the inmate's Individualized Needs Plan in the Insight case management system, and the inmate will receive a copy. The unit team will also enter the appropriate FSA eligibility assignment into SENTRY.

## 5.  RISK AND NEED ASSESSMENT

All sentenced inmates, regardless of eligibility status, will receive both a risk and need assessment.  The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) is the recidivism risk assessment tool and part of the Bureau's FSA-approved Risk and Needs Assessment System.  The PATTERN tool is completed during the inmate's Initial Classification and is used to assign each incoming inmate an initial recidivism risk level of Minimum, Low, Medium, or High.  The Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13) is the Bureau's needs assessment system and the other half of the Bureau's FSA-approved Risk and Needs Assessment System.  It is used to assess the inmate in 13 need areas which can be targeted to reduce the inmate's risk of recidivating.  See the Program Statement **First Step Act Needs Assessment.**

After the inmate's arrival to their designated facility for service of their sentence and during the initial admission and orientation phase, the PATTERN and SPARC-13 assessments will be completed.  While PATTERN is completed during the inmate's Initial Classification, the SPARC-13 is a multi-part, multi-department assessment process.  Ordinarily, the Initial Classification is completed within 28 days of the inmate's arrival, but completing the PATTERN tool requires the inmate's sentence computation to be completed.  If the sentence computation is incomplete, the Initial Classification should be delayed pending its completion, and the basis for delay should be annotated on the inmate's Program Review Report.  The SPARC-13 is ordinarily completed within the 30 days of an inmate's arrival, however, portions of the SPARC-13 assessment require the inmate's active participation.  Failure on the inmate's part to complete the survey assessments timely will delay completion and negatively impact the inmate's ability to begin earning FTCs as the inmate will be considered "opted out," and therefore is in non-earning status regardless of eligibility to earn FTCs.

Using SPARC-13, staff will recommend and document EBRR programs and/or PAs for inmates consistent with the requirements of the Program Statement **First Step Act Needs Assessment.** If the inmate declines to participate in an EBRR program or PA which has been recommended based on an identified needs area, the department staff assessing the need area will enter a program decline code indicating the inmate's opt out status; otherwise, the inmate will be placed in the program or on a waitlist with the applicable assignment keyed into SENTRY by the department staff assessing the need area.

Should an inmate later refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist, staff will enter the applicable decline code in SENTRY, and the inmate will be considered declined for the entire period on the waitlist.  Any credits earned during the waitlist period will be rescinded to reflect the inmate's refusal.

If an inmate fails to complete a recommended EBRR or PA to address an identified need area, staff will enter the applicable fail or withdraw code into SENTRY, and the inmate will be considered opted out, and therefore, in non-earning status. Inmates with cognitive or physical disabilities may require more time or additional accommodations to complete an EBRR program or PA. The Program Statement **Management of Inmates with Disabilities** provides guidance on developing local accommodations. If questions about the impact of a disability on earning FTC arise, staff may contact the Women and Special Populations Branch in the Reentry Services Division.

During the inmate's Initial Classification, the unit team will develop an Individualized Need Plan for the inmate based on the results of the inmate's needs assessment and related recommendations provided by the departments that assessed the need area as documented in SENTRY and Insight Feedback. Recommendations may include EBRR programs and/or structured curriculum-based PAs designed to address the inmate's identified need areas and based on the inmate's ability to complete the program/activity.

Additional groups, programs, classes, or unstructured activities may be recommended to assist the inmate in establishing positive institutional adjustment and involvement in pro-social activities. The inmate's risk level, needs assessment results, and program recommendations will be documented on the inmate's Insight Individualized Need Plan, and the inmate will receive a copy.

An inmate will be reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration. As defined in the Program Statement **Inmate Classification and Program Review**, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan, as appropriate. The inmate will receive a copy of their updated Individualized Need Plan which will include the reassessed risk level, need areas, and program recommendations.

6.  **HOW TO EARN FTCs**

§ 523.42 **Earning First Step Act Time Credits.**

(a) *When an eligible inmate begins earning FSA Time Credits.* **An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).**

Because the ability to accrue time credits begins after the inmate's current term of incarceration begins (e.g., the date the inmate arrives at or voluntary surrenders to their initially designated

Bureau facility to serve their sentence), an inmate cannot earn FTCs during pretrial confinement, nor can they earn credits based on a prior incarceration. Further, an inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed, or once released to their supervised release term.

(b) *Dates of participation in EBRRs or PAs.*
> **(1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.**
> **(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.**
> **(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.**

(c) *Amount of FSA Time Credits that may be earned.*
> **(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.**
> **(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:**
> > **(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and**
> > **(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.**

The calculation of FTCs is fully automated and based on the number of 30-day periods in earning status. Additionally, the eligibility to earn FTCs is distinct from the ability to apply/use FTCs.

## 7. LIMITATIONS ON EARNING OF FTCs

Despite being eligible to earn FTCs, there are situations where an inmate is unable or unwilling to participate in EBRR programs or PAs, and therefore cannot earn FTCs. Such circumstances

may include, but are not limited to, the following:

- Placement in Disciplinary Segregation status );
- Designation status outside the institution (e.g., an outside medical trip or escorted trip, in-transit or at an in-transit facility, a furlough for the full day, etc.);
- Placement in the custody of another jurisdiction (e.g., on state or federal writ, transfer to state custody for service of sentence, transfer to another federal agency, etc.);
- Placement in mental health/psychiatric holds;
- Detention as a material witness or for civil contempt;
- Placement in civil commitment; or
- "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

If an inmate refuses to participate in required programs (e.g. Inmate Financial Responsibility (FRP), Drug Education, etc.), the inmate will not earn FTC. While these programs are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs.

## 8. TRACKING AND EARNING OF FTCs

FTCs are awarded based on the inmate's eligibility to earn credit, completion of the PATTERN and SPARC-13 assessments, and ongoing participation in programs designed to reduce the risk of recidivating. Once an inmate is in earning status, they will remain in earning status unless or until the limitations outlined in the previous section of this Program Statement are applied.

FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews, based on a completed 30-day period. No FTCs will post to the inmate's record if he/she has not accrued 30 days in earning status. Rather, any days in FTC earning status will carry over to the next monthly cycle, and the inmate will receive all applicable FTCs at that time.

For example: If the first monthly posting of FTCs for an inmate occurs only five days after completing their initial assessments and going into earning status, no FTCs will post to the inmate's record as they have not yet accrued 30 days in earning status. Rather, the five days will carry over to the next monthly cycle, and the inmate will receive the FTCs at the end of the second month. If later, the inmate goes into FRP Refuse or declines a recommended needs-related program and goes into opt out status, the inmate is no longer in earning status, and therefore, stops accruing days toward FTCs and no FTCs will post to the inmate's record. Once the inmate returns to earning status, they will resume accruing days toward the earning of FTCs.

9.  **LOSS AND RESTORATION OF FTCs**

**§ 523.43 Loss of FSA Time Credits.**

*(a) Procedure for loss of FSA Time Credits.* **An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA. The procedures for loss of FSA Time Credits are described in** 28 **CFR part 541.**

Per the FSA, only earned time credits can be lost, and future time credits cannot be impacted. For purposes of inmate discipline, time credits are considered officially "earned" during the monthly auto-calculation or at the time of the inmate's last Program Review assessment, whichever was most recent.  A sanction of loss of FSA time credits by the Discipline Hearing Officer (DHO) may only be imposed when an inmate is found to have committed a prohibited act.  Loss of FTCs cannot be entered as a suspended sanction. See the Program Statement **Inmate Discipline Program**.

(b) *How to appeal loss of FSA Time Credits.* **Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).**

(c) *Restoration of FSA Time Credits.* **An inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau.**

The authority to restore any portion of the offender's lost FTCs is delegated to the Warden and may not be delegated lower than the Associate Warden level.  The inmate may request restoration of FTCs during a regularly scheduled Program Review and only after having maintained clear conduct for two consecutive risk and needs assessments.   The Unit Manager will submit a request using BP-A1156, Restoration of Federal Time Credits, along with the unit team's recommendation, through the DHO to the Warden (or designee) for final decision. If the recommendation to restore FTCs is approved, the Unit Manager or Acting Unit Manager will process the restoration approval into the inmate's record and update via Insight or Insight Feedback.

Whether denied or approved, a copy of the decision will be provided to the inmate.  If denied, the inmate will be advised that they may reapply for FTC restoration six months from the date of denial, if clear conduct is maintained.  A copy will be maintained in the inmate's J&C and electronic inmate central file (e-ICF), with other sentence computation documents.

10. **APPLICATION OF FTCs**

§ 523.44 Application of FSA Time Credits.

(a) *How Time Credits may be applied.* For any inmate eligible to earn FSA Time Credits under this subpart who is:

> (1) Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.
> (2) Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (*see* 18 U.S.C. 3632(d)(4)(E)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.
> (3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code (see Section 105 of the FSA, Pub. L. 115-391, 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release. This paragraph (a)(3) will not bar the application of FSA Time Credits, as authorized by the DC Code, for those serving a term of imprisonment for an offense under the DC Code.

Inmates sentenced under the DC Code can neither earn nor apply FTCs unless and until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility) and defines the criteria which authorizes the application of FTC (i.e., any circumstances, if any, which preclude application). If and when the earning and application of FTCs is authorized for inmates sentenced under the DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY. Any retroactive application of FTCs will be made consistent with the authorities granted under the DC Code.

While inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible, they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved. An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of FTCs.

(b) *Consideration for application of FSA Time Credits.* Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:
> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;
> (2) Shown through the periodic risk reassessments a demonstrated recidivism risk

reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and

(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

(c) *Prerelease custody.* The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:

(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:

(i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(iii) The prisoner is unlikely to recidivate.

To apply FTCs to prerelease placement, an inmate must otherwise be eligible to participate in prerelease custody separate from any FSA eligibility criteria, be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement.  For inmates with minimum or low risk who have not yet maintained two consecutive assessments, they will need to submit a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review in order to have their early application of FTCs considered. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.

Inmates with high or medium PATTERN recidivism risk levels are exceptions to the routine application of this policy with regard to awarding FTCs toward early transfer to prerelease custody and/or supervised release.  The Warden will consult with the Regional Director before approving an inmate under section (c)(2), unless an exemption is granted by the Regional Director consistent with the Program Statement **Directives Management Manual**.  Ordinarily, inmates considered inappropriate for early transfer to prerelease custody or supervised release under section (c)(2) include, but are not limited to, inmates who:

- Have a high or medium PATTERN recidivism risk level
- Have a current or prior offense listed in the Program Statement **Categorization of Offenses**. Early transfers for such inmates are considered only in highly unusual circumstances. Ordinarily, an inmate is precluded from receiving an early transfer if he/she has an offense

CURRY, ARTHUR 03036057

listed in either the Section titled "Offenses categorized as crimes of violence", or the Section titled, "Offenses that at the Director's discretion shall preclude an inmate's receiving certain Bureau program benefits".

- Has a Public Safety Factor (PSF) that the Designation and Sentence Computation Center (DSCC) Administrator has not waived.
- Have a history of community-based supervision (i.e., probation, parole, supervised release, halfway house, home confinement, etc.) non-compliance to include technical violations, escape, absconding/eluding, and/or new criminal conduct.
- Inmates who have been found to have committed 100 OR 200 level prohibited acts during the current term of incarceration, or the prohibited acts of using drugs or alcohol, drug possession, possession of drug paraphernalia, or introduction of drugs into Bureau institutions within the last three years from the date of the incident.

Additionally, inmates with high or medium PATTERN recidivism risk levels must demonstrate a good faith effort to lower their recidivism risk by:

- Maintaining clear conduct for at least three years from the date of the request.
- Successfully completing at least one of the Bureau's residential EBRR programs recommended based on an identified need area within the past five years, if any have been assigned.
- Is otherwise compliant with all the other requirements of this Program Statement with regard to successful program participation.

Inmates may initiate a request under (c)(2) by submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.

For Minimum and Low PATTERN risk inmates, consistent with the methodology described in Sections 6 and 7 of this policy, the Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence. The Bureau will make an initial projection based on the inmate's PATTERN risk level. (For inmates currently in custody as of the effective date of this policy, the PATTERN risk level will be presumed to be the current level). This FSA PRD is subject to change during the inmate's incarceration, and it will be adjusted if the inmate's PATTERN score changes or if the inmate enters non-earning status.

FTC will not be applied towards an inmate's release date unless earned. Medium and High PATTERN risk inmates may earn FTC, but will not receive an estimated FSA PRD.

RRC and/or HC referrals will ordinarily be submitted to the respective Residential Reentry

Management (RRM) office 12 months in advance of the inmate's PRD or at least 60 days prior to the projected RRC/HC placement date, whichever is greater. The RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review (see 18 U.S.C. § 3621(b)), required under the Second Chance Act, plus the remaining number of FTC days not applied to supervised release at the time of the referral. When determining the FTC days available to be applied toward RRC/HC placement, the Bureau will assume that the inmate will remain in earning status from the referral date until the transfer to prerelease custody. There is no expectation the RRC/HC placement date will be modified once the referral has been submitted to the RRM office.

Prerelease placement is dependent on, but not limited to, the inmate's release residence, program requirements, and available contract bed space and funding.

**(d)** *Transfer to supervised release.* **The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:**

> **(1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;**
> **(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and**
> **(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.**

For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:

- Has a term of supervised release to follow the term of incarceration
- Has a low or minimum PATTERN risk level
- Has maintained a low or minimum PATTERN risk level for at least two consecutive assessments conducted during regularly scheduled Program Reviews
- Has no detainers or unresolved pending charges, to include unresolved immigration status and
- Has not opted out or refused to participate in any required program, and therefore, is in earning status.

As explained in Section 10(b), the Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody. If an inmate on prerelease custody has already earned the maximum 365 days of credit toward supervised release, the PRD will be adjusted only if the inmate loses earned FTCs

CURRY, ARTHUR 03036057

consistent with Section 9.  If an inmate is returned to prison for a violation during prerelease custody or any other reason, their projected FTCs may be adjusted depending on any failure to remain in earning status.

11. **RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM EARLY RELEASE BENEFIT AND FTCs**

Inmates who successfully complete the Residential Drug Abuse Treatment Program (RDAP) and are eligible for early release pursuant to 18 U.S.C. § 3621(e) may also earn FTCs which could be applied towards an additional reduction to their Projected Release Date (PRD).  Eligibility to apply earned FTCs is separate and unrelated to the eligibility requirements under 3621(e).

An inmate must complete all required components of RDAP, including the community-based treatment component, in order to receive the early release benefit pursuant to 18 U.S.C. § 3621(e).  The 3621(e) benefit will be applied first to the inmate's sentence computation, followed by the application of FTCs, however, an inmate must have sufficient time remaining to serve to complete all required components of the RDAP program (i.e., 120-day community-based treatment).

In the event an inmate has insufficient time remaining to serve after completing the RDAP program to receive both the early release benefit under 3621(e) and the full 365 days toward early release of earned FTCs, the number of FTC days applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

Regardless of whether the inmate is receiving the 3621(e) release benefit alone or in conjunction with FTCs, the inmate will have a conditional release method entered into SENTRY until the inmate receives a community-based placement date with, at a minimum, the required 120 days and the unit team has submitted a completed BP-A0628, Notification of RRC Placement Date, to the Designation and Sentence Computation Center (DSCC).

Inmates who release early pursuant to section 3621(e) and who also earn FTCs will be keyed with the release method which identifies that both benefits have been applied.  The Correctional Systems t intranet page provides a list of FSA release method codes and descriptions for staff.

12. ADMINISTRATIVE REMEDIES.

Inmates who wish to seek review of any issue relating to this Program Statement may use the procedures outlined in the Program Statement **Administrative Remedy Program**.

## REFERENCES

*U.S. Codes or Regulations Referenced*
8 U.S.C. § 1101
18 U.S.C. § 3624
18 U.S.C. § 3632
28 C.F.R. § 541
28 C.F.R. § 542

*Program Statements*
| | |
|---|---|
| 1221.66 CN-1 | Directives Management Manual (7/21/1998) |
| 1330.18 | Administrative Remedy Program (1/6/2014) |
| 5162.05 | Categorization of Offenses (3/16/2009) |
| 5200.06 | Management of Inmates with Disabilities (11/22/2019) |
| 5220.01 | First Step Act Program Incentives (7/14/2021) |
| 5270.09 CN-1 | Inmate Discipline Program (11/18/2020) |
| 5322.13 | Inmate Classification and Program Review (5/16/2014) |
| 5330.11 CN-1 | Psychology Treatment Programs (4/25/2016) |
| 5331.02 CN-2 | Early Release Procedures under 18 U.S.C. § 3621(e) (9/27/2017) |
| 5400.01 | First Step Act Needs Assessment (6/25/2021) |

*Forms*
| | |
|---|---|
| BP-A0148 | Inmate Request to Staff |
| BP-A0628 | Notification of RRC Placement Date |
| BP-A1156 | Restoration of Federal Time Credits |

*ACA Standards:*

**American Correctional Association Standards for Adult Correctional Institutions - 5th Edition:**
5-ACI-2C-11, 5-ACI-3C-01, 5-ACI-3C-03, 5-ACI-3C-04, 5-ACI-3C-07, 5-ACI-3C-08, 5-ACI-3C-11, 5-ACI-3C-13, 5-ACI-3C-15, 5-ACI-3C-19,
5-ACI-3C-23, 5-ACI-3D-19, 5-ACI-4A-09, 5-ACI-5B-01, 5-ACI-5B-03, 5-ACI-5B-04, 5-ACI-5B-05, 5-ACI-5B-06, 5-ACI—5B-07, 5-ACI-5B-08,
5-ACI-5B-09, 5-ACI-5E-02, 5-ACI-5E-11, 5-ACI-5E-12, 5-ACI-5E-13, 5-ACI-5E-14, 5-ACI-5E-15, 5-ACI-6A-42, 5-ACI-6C-06, 5-ACI-7B-10

**American Correctional Association Performance Based Standards for Adult Local Detention Facilities - 4th Edition:**
4-ALDF-2A-30, 4-ALDF-2A-47, 4-ALDF-2A-50, 4-ALDF-3A-01, 4-ALDF-3A-02, 4-ALDF-4C-40, 4-ALDF-5A-04, 4-ALDF-5A-08,
4-ALDF-6B-01, 4-ALDF-6B-02, 4-ALDF-6B-04, 4-ALDF-6B-05, 4-ALDF-6B-08, 4-ALDF-

6C-01, 4-ALDF-6C-03. 4-ALDF-6C-04, 4-ALDF-6B-07, 4-ALDF-6C-09, 4-ALDF-6C-11, 4-ALDF-6C-12, 4-ALDF-6C-14, 4-ALDF—6C-15, 4-ALDF-6C-18, 4-ALDF-7D-2

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

Francis Miller # 56407-004
FCC Coleman Low G-4
P.O. Box 1031
Coleman, Fl 33521

Department of Homeland Security
U.S Citizenship and Immigration Service
18201 S.W. 12th Street
Miami, FL 33194

December 5, 2022

Re: Deportation and Removal

Dear Director:

I was attempting to illegally reenter the
United States abord a ship stopped in the
open sea. The boat contained cocaine and I
was prosecuted accordingly. I am projected
to be released on 6-3-2023. I qualify for
First Step Act, Earned Credit Time and have
earned the right to an early release. I
have earned 705 days of early release

credit time. I wish to use these earned days to expidite my deportation and removal. The United States Department of Justice: Program Statement No. 5410.01, Dated: November 19, 2022 states: "inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible but they will be unable to apply them... unless the charges and/or detainers are resolved. An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regards to the application of FTC."

My detainer is resolved by a final order of deportation and removal. My ETC substantially exceeds my remaining sentence and an order could be issued immediately. I would no longer be a burden on the United States and could return to my country and family. I respectfully request immediate release and deportation pursuant to the law

Respectfully, [signature] 12-05-22

OMB No. 1615-0019; Expires 03/31/2015

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-243, Application for Removal**

NOTE: Complete your application in duplicate. Take or mail it to a Department of Homeland Security office nearest your place of residence. A separate application must be filed by each applicant, except that children under 14 years of age may be included in a parent's application.

**Applicant's Request for Removal:** Being in distress or in need of public aid from causes arising after entry, I hereby request to be removed from the United States at government expense.

1. Name (Family Name)  **Miller**     (First Name)  **Francis**     (Middle Name)
2. File Number (Alien Registration Number)  **No 90407505**

3. Present Address (Apt. No.)  **Federal Correctional Cmplx, P.O. Box 1031**   (Number and Street)   (City or Town) **Coleman Fl 33521 U.S.A** (Country)

4. Date of Birth (mm/dd/yyyy)  **12-13-1976**
5. Place of Birth (City or Town) **Freeport Grand Bahamas** (Country, Province, or State) **Bahamas**   Country of Citizenship/Nationality) **Bahamas**

6. Date of Entry into U.S. (mm/dd/yyyy) **11-24-2002**   Port of Entry **Miami**   Name of vessel, airline, or other means of conveyance **United State Coast Guard**

7. Status at Entry (Please select one):  ☐ Permanent Resident  ☐ Temporary Visitor  ☐ Entered Without Inspection  ☐ Other (Specify) **✓ Illegal Reentry (Incarserate)**

**Nassau Bahamas** Please attach any documents issued to you at time of entry

8. Do you have a Permanent Resident Card?  ☐ Yes  ☒ No
9. Have you been issued a Reentry Permit?  ☐ Yes  ☒ No

10. Removal is requested to: (City or town) **Nassau Bahamas** (Country, district, province, or state) **Bahamas**

11. Do you have a Valid Passport or Travel Document for entry into the country shown above?  ☐ Yes  ☒ No
12. Have you previously filed an Application for Removal?  ☐ Yes  ☒ No

13. The persons listed below depend on me for support: (if none, write "None")      Will They Accompany You?

| Name | Age | Relationship | Address | Yes | No |
|---|---|---|---|---|---|
| None | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

14. List your nearest relatives in the country to which removal is requested:

| Name | Age | Relationship | Address |
|---|---|---|---|
| None | | | |
| | | | |

15. Have you received assistance from a public or charitable institution association? (If so, complete the following and have an official of such organization complete the certificate on the reverse side. If not, skip to **Question 16**.)  ☐ Yes  ☒ No

| Name of Institution or Association | Complete Address |
|---|---|
| | |

16. If you have not received such assistance, indicate the financial circumstances that cause you to need public aid and attach any documentary evidence available to support your statements.

**I am in federal prison, with years of savings ($13,000.00)** must be but deported.

17. APPLICANT'S CERTIFICATION: I understand that if this application is granted, and I am removed from the United States, I will be ineligible to apply for or receive a visa or other documents for readmission, or to apply for admission to the United States, except with the prior approval of the Secretary of the Department of Homeland Security. I certify that the above statements are true and correct to the best of my knowledge and belief.

_____ (Signature of Applicant)      **12-05-22** (Date)

18.    **Signature of person preparing form, if other than applicant**

I declare that this document was prepared by me at the request of the applicant and is based on all information of which I have any knowledge.

| (Printed Name) | (Address) | (Date) |
|---|---|---|
| (Signature of Preparer) | ( ) (Telephone Number) | E-mail address (if any) |

Form I-243 (Rev. 03/01/13) Y

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

23036057